ANDREW LEE SADLER, A MINOR BY HIS NEXT FRIEND, JAMES M. SADLER
v. FLOYD MOSBY PURSER

No. 712SC450

(Filed 18 August 1971)

### 1. Rules of Civil Procedure § 17— minor plaintiff — representation by guardian ad litem

Under the new Rules of Civil Procedure, infants and incompetents who are plaintiffs in any action or special proceeding must appear therein by general or testamentary guardian, if they have any within the State, or by duly appointed guardian ad litem, and not by a next friend as under the former practice. G.S. 1A-1, Rule 17(b).

### 2. Rules of Civil Procedure § 50— motion for directed verdict — question presented

The motion for a directed verdict under Rule 50(a) presents substantially the same question as that formerly presented by a motion for judgment of involuntary nonsuit, namely, whether the evidence was sufficient to entitle the plaintiff to have the jury pass on it.

### 3. Automobiles § 84; Negligence § 18— contributory negligence of 15 year old plaintiff

A 15 year old plaintiff is presumed to have sufficient capacity to understand and avoid a clear danger, and absent evidence to rebut such presumption, he is chargeable with contributory negligence as a matter of law if the only inference which could reasonably be drawn from his own evidence is that he failed to do so.

### 4. Automobiles § 39— bicycle as motor vehicle

A bicycle is a vehicle and its rider is a driver within the meaning of our Motor Vehicle Law. G.S. 20-38(38).

### 5. Automobiles § 85— contributory negligence by minor bicyclist

Evidence of the 15 year old plaintiff disclosed his contributory negligence as a matter of law where it showed that plaintiff, after peddling slowly down the wrong side of the highway, attempted to drive his bicycle from the left-hand traffic lane across the right-hand lane to the shoulder of the road without first ascertaining that it was safe for him to do so and without giving any signal of his intention to make such a maneuver, and that in so doing, he drove his bicycle suddenly and directly into the path of defendant's oncoming car.

APPEAL by plaintiff from *Rouse, Judge,* 22 February 1971 Session of Superior Court held in BEAUFORT County.

This is a civil action to recover damages for personal injuries suffered by plaintiff when defendant's automobile collided with plaintiff's bicycle. The collision occurred on 20 August 1967 at approximately 2:30 p.m. on N.C. Highway #32 at a

point several miles south of Plymouth and north of Washington, N. C. The parties stipulated that at the time of the accident plaintiff was fifteen years old, that at the place of the accident the road was straight and level, and ran through generally open country, the weather was clear, the road was dry, and the posted speed limit was 60 miles per hour.

Plaintiff's evidence, when taken in the light most favorable to plaintiff, tends to show the following: At the scene of the accident the highway runs generally north and south and is a two-lane paved highway, with one lane for northbound and one lane for southbound traffic. The paved portion is 20-feet wide. There is a 15-foot wide grass shoulder on the west side and a 10-foot wide grass shoulder on the east side of the highway. Defendant was driving his 1963 Pontiac automobile south on the highway, coming from Plymouth and going toward Washington, and was traveling at a speed of 55 to 60 miles per hour. As defendant came up over a little rise in the road, he observed two young boys on bicycles about nine hundred feet ahead of him. When he first saw them they were riding their bicycles, one behind the other, on the east side of the highway and headed north toward the defendant. A third boy was walking toward the defendant on the shoulder on the east side of the highway. When defendant first saw the boys, he blew his horn and the boys on bicycles turned around and headed back south. One of the boys stopped and talked with the pedestrian by the east side of the road. The other boy, plaintiff in this action, continued riding his bicycle south, traveling on the east side of the highway, being the left-hand lane going south, about three feet onto the pavement. Defendant continued driving south down the highway, and did not begin to decrease speed until he was about fifty feet from plaintiff. Defendant blew his horn a second time, and about the time he did so, plaintiff rode his bicycle over on the right-hand side of the highway into the path of defendant's car. Defendant then applied his brakes. The front of defendant's automobile struck plaintiff when he had reached a point in the right-hand traffic lane about three feet from the right-hand shoulder, throwing plaintiff up over the hood and against the windshield. After defendant's car struck plaintiff, it went into a skid to the right and came to rest with its front wheels on the edge of the highway and with its back wheels on the edge of the ditch on the right-hand or west side of the highway. Plaintiff was found lying unconscious under-

neath the back of the car. His bicycle was partially beneath the right rear portion of the automobile. There was a total of 190 feet of skid marks leading from the automobile back north along the west shoulder to the edge of the pavement and then on the pavement.

Plaintiff was seriously injured as a result of the collision and was unable to remember the accident or anything that happened just before the collision. The other bicyclist, Chester Lee Spruill, testified as follows:

"When I first observed the 1963 Pontiac, Andrew Sadler was going slow. . . . He was peddling slow. He was headed toward Washington, away from Plymouth. He was in the left lane, going toward Washington. . . . I was talking to Harris White and the car was coming down the road. I heard him blow his horn while he was down the road, it blew once or twice, beep, beep. About two telephone poles away, I heard it blow. Then the car got closer. It didn't break its speed and the car got closer. Then I was standing still talking to Harris. Then I glanced back again. I saw it getting close and Andrew, he was riding kind of close to the white line. Then he started toward the white line. I said 'Watch out.' He tried to get off the shoulder. He speeded up his bicycle, tried to get off the shoulder.

"The car went off the shoulder. The car came back, tried to get back on the highway. . . . It hit him and he hit the windshield and got under the car somehow. Then the car skidded down the road sideways. . . .

*  *  *  *  *

"I did not see the 1963 Pontiac's speed decrease until it was right on him. I would say about fifty feet. It was pretty close. I did not hear a horn prior to impact. The whole left side of the car was on the highway and I think Andrew's front wheel was off the highway when it hit him.

The right side of the car was off the road. . . . I don't recall the automobile ever returning completely onto the highway after it struck Andrew. . . . There was no traffic behind the Purser vehicle. There was no traffic in front of it."

On cross-examination, Spruill testified:

"The only time I heard it blowing was down the highway, about two or three telephone poles back of me. That would have been back of Andrew. And I saw Andrew turn to his right, across the highway. And I hollered to him to look out. But he kept on going across the highway and I heard the squalling of the automobile brakes and when Andrew got about to the right-hand edge of the highway, that is when the collision occurred. He was peddling real fast at that time trying to get off the highway."

At the close of plaintiff's evidence, defendant moved for a directed verdict under Rule 50 of the Rules of Civil Procedure on the grounds that plaintiff's evidence failed to disclose actionable negligence on the part of defendant and established contributory negligence on the part of plaintiff as a matter of law. From judgment allowing the motion and adjudging that plaintiff recover nothing of defendant, plaintiff appealed.

*Chambers, Stein, Ferguson & Lanning, by Fred A. Hicks for plaintiff appellant.*

*Rodman & Rodman, by Edward N. Rodman for defendant appellee.*

PARKER, Judge.

[1] The title to this action would indicate that the infant plaintiff appears by his next friend, which would be in accord with the practice which formerly prevailed in this State. 1 McIntosh, N. C. Practice and Procedure, 2nd Ed., § 690, p. 375. This practice has been changed by our new Rules of Civil Procedure, which now provide that in actions or special proceedings when any of the parties plaintiff are infants or incompetent persons, they must appear by general or testamentary guardian, if they have any within the State, or by duly appointed guardian *ad litem.* Rule 17 (b) of the Rules of Civil Procedure. The change effected was more than a mere change in nomenclature, since substantial differences had been recognized between the powers and duties of a next friend and those of a duly appointed guardian *ad litem.* See *Thompson v. Lassiter,* 246 N.C. 34, 97 S.E. 2d 492; *Johnston County v. Ellis,* 226 N.C. 268, 38 S.E. 2d 31. This action was commenced on 3 June 1970, after the effective date of the new Rules, and the infant plaintiff should have appeared by his duly appointed guardian *ad litem.* Realizing this, the

parties stipulated on final pretrial conference that although James M. Sadler is designated next friend for the minor plaintiff, he is properly qualified as guardian *ad litem* for said minor. Accordingly, we will ignore the incorrect designation in the title to this action and recognize the minor plaintiff as appearing by his duly appointed guardian *ad litem*.

[2] Appellant's sole assignment of error is that the trial court erred in granting defendant's motion for a directed verdict, which was made at the close of plaintiff's evidence on the dual grounds that the evidence failed to disclose actionable negligence on the part of defendant and established plaintiff's contributory negligence as a matter of law. The motion for a directed verdict under Rule 50(a) presents substantially the same question as that formerly presented by a motion for judgment of involuntary nonsuit, namely, whether the evidence was sufficient to entitle the plaintiff to have the jury pass on it. *Kelly v. Harvester Co.,* 278 N.C. 153, 179 S.E. 2d 396.

"The very presence of a young boy riding a bicycle on the highway is, in itself, a danger signal to a motorist approaching him from the rear. Ordinarily, it is a question for the jury as to whether the motorist has responded to such danger signal as a reasonable man would have done." *Champion v. Waller,* 268 N.C. 426, 150 S.E. 2d 783. In the present case, however, we find it unnecessary to decide this question, since, even if it be conceded that the evidence was sufficient to require submission to the jury of an issue as to defendant's actionable negligence, in our opinion plaintiff's evidence so clearly established his own contributory negligence as a matter of law that the trial court's judgment must be sustained.

[3] At the time of the accident, plaintiff in this case was fifteen years old. Therefore, there is a rebuttal presumption that he possessed the capacity of an adult to protect himself and he is presumptively chargeable with the same standard of care for his own safety as if he were an adult. *Welch v. Jenkins,* 271 N.C. 138, 155 S.E. 2d 763. In this case there was no evidence to rebut that presumption nor was any contention made that plaintiff was lacking in the ability, capacity, or intelligence of the ordinary boy of his age. Thus, he was presumed to have sufficient capacity to understand and avoid a clear danger, and he is chargeable with contributory negligence as a matter of law if the only inference which could reasonably be drawn from

---

Sadler v. Purser

---

his own evidence is that he failed to do so. *Burgess v. Mattox,* 260 N.C. 305, 132 S.E. 2d 577.

[4, 5]   A bicycle is a vehicle and its rider is a driver within the meaning of our Motor Vehicle Law. G.S. 20-38 (38) ; *Lowe v. Futrell,* 271 N.C. 550, 157 S.E. 2d 92. Here, all of the evidence establishes that plaintiff, after peddling slowly down the wrong side of a 60-mile per hour highway, attempted to drive his bicycle from the left-hand traffic lane across the right-hand lane to the shoulder of the road without ascertaining that it was safe for him to do so and without first giving any signal of his intention to make such a maneuver. In so doing, he drove his bicycle suddenly and directly into the path of defendant's oncoming car. He either failed to hear defendant's horn signals, which his companion heard and plaintiff should have heard, or, having heard, he ignored them. He either failed to look for what was plainly there for him to see, or, having seen, disregarded what he saw. In our opinion, the only inference which may reasonably be drawn from plaintiff's evidence is that he failed to exercise that degree of care for his own safety which a reasonably prudent person would have done under the circumstances and that such failure was a proximate cause contributing to his injuries.

The case of *Webb v. Felton,* 266 N.C. 707, 147 S.E. 2d 219, relied on by plaintiff, is distinguishable. There was here no evidence, as there was in that case, that plaintiff-bicyclist was startled into involuntary action by any sudden and frightening noise behind him or that his turning into the path of defendant's car was the result of anything other than his own deliberate action.

Defendant's motion for a directed verdict was properly allowed and the judgment appealed from is

Affirmed.

Judges BRITT and MORRIS concur.